IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brenda Gail Cutro, # 212971, | ) | C/A No.: 1:16-2048-JFA-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Marion Boulware, Camille Graham | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Brenda Gail Cutro, while an inmate at the Camille Graham Correctional

Institution of the South Carolina Department of Corrections, filed this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 through counsel. This matter is before the

court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a

Report and Recommendation on Respondent's motion for summary judgment and return.

[ECF Nos. 8, 9]. On August 1, 2016, Petitioner filed a response in opposition to the motion

for summary judgment. [ECF No. 13]. And on August 2, 2016, Respondent filed a

reply. [ECF No. 14]. The matter having been fully briefed, it is ripe for disposition.

Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

The South Carolina Supreme Court summarized the facts of this case as follows:

Appellant and her husband Josh Cutro operated a home daycare in Irmo,
South Carolina. Between January and September of 1993, two infants,
Parker Colson and Ashlan Daniel, died at the Cutros' home. A third infant,
Asher Maier, became ill while at their home and was subsequently diagnosed

with serious brain damage. The State produced evidence that all three infants were victims of Shaken Baby Syndrome. Appellant was convicted of two counts of homicide by child abuse and sentenced to concurrent life sentences for killing Parker Colson and Ashlan Daniel; she was acquitted of the assault and battery charge regarding Asher Maier.

The State's theory of the case was that appellant's actions were motivated by Munchausen Syndrome by Proxy (MSBP), which the State's medical experts defined as a form of child abuse in which the perpetrator harms a child in order to garner sympathy and attention for herself.

Parker Colson

Parker Colson was almost five months old when he was found dead in his crib at the Cutros' home on January 4, 1993. According to his parents, Parker was a healthy baby and had no health problems that morning. His mother dropped him off at the Cutros' daycare at about 7:30 a.m. At 1:57 p.m., emergency personnel received a call to the Cutros' home. When they arrived at 2:11 p.m., Parker was not breathing. He was rushed to the hospital where he was declared dead.

Parker's mother testified that appellant told her the following regarding Parker's death:

> A:    She told me that Parker was taking a nap. She went in and checked on him. He was asleep. She went in the kitchen, reached up in the cabinet to get his food down. Josh came in behind her and screamed, Parker's not breathing, call 9-1-1.

. . . .

> Q:    After she left the room where Parker was and went into the kitchen, how long a period of time did she indicate it was before Josh entered the room and screamed?

> A:    The way she explained it to me was she checked on Parker, walked into the kitchen, and reached in the cabinet. Josh walked in behind her and screamed, Parker's not breathing, call 9-1-1—however long it takes to get from the living room into the kitchen and reach into a cabinet, a few seconds. And her kitchen was right beside the living room.

Q:     So according to Gail Cutro, who was the last person who had contact with your son Parker before Josh Cutro found him not breathing?

A:     Gail.

After an autopsy, the coroner's office reported Parker's cause of death as Sudden Infant Death Syndrome, or "SIDS," which is the diagnosis given when an infant's cause of death cannot be identified.   Dr. Daniel, who performed the autopsy, did note the presence of petechial hemorrhages in the cortical section of Parker's brain which she testified was unusual in a SIDS case.

In July 1994, Parker's body was exhumed and re-autopsied.   Dr. Ophoven, who reviewed the autopsy report, concluded that the presence of the petechial hemorrhages in Parker's brain and a sub-dural hematoma, which had not been discovered in the original autopsy, indicated Parker had died a traumatic death caused by shaking and asphyxia.   Dr. Gilbert-Barness testified that Parker died of Shaken Baby Syndrome which damaged the medulla causing the heart and respiration to stop.

Other medical testimony indicated that Shaken Baby Syndrome can occur with no external sign of trauma.   Because a baby's brain is not fully developed, violent shaking damages the vital center of the brain that controls breathing which can cause death by asphyxiation.   The presence of petechial hemorrhages indicates asphyxia.   Expert testimony further indicated that the symptoms of Shaken Baby Syndrome manifest immediately after shaking—head injury occurs within seconds and a baby might die immediately.

Asher Maier

Asher Maier was four months old when he began daycare with the Cutros on June 7, 1993.   A couple of days after beginning daycare, Asher became irritable and stopped sleeping through the night.   He was fussy on June 23 when his mother dropped him off at the Cutros' at about 7:30 a.m.   Between 10:30 and 10:50 a.m., Mrs. Maier received a telephone call at work from appellant stating that the baby was "inconsolable" and suggesting she pick him up and take him to the doctor.   When Mrs. Maier arrived at the Cutros' a short time later, the baby was already in his car seat and they immediately handed him to her.   Asher remained in his car seat until he was in the doctor's office.   When Mrs. Maier removed him, she discovered Asher was limp and unable to control his neck.   Another child's parent had seen Asher that morning in daycare and testified he was moving normally at that time.

Dr. Alexander, who reviewed Asher's medical records, testified in his opinion Asher had been the victim of two shaking episodes. An MRI and CT scan revealed old and new blood in his brain indicating an earlier episode, probably two weeks previous, that had healed to some extent. Asher also exhibited retinal hemorrhages indicative of Shaken Baby Syndrome.

Ashlan Daniel

Ashlan Daniel was about two months old when she began daycare with the Cutros in June 1993. Ashlan was in daycare for about only two hours a day while Mrs. Daniel worked part-time. On September 9, 1993, Mrs. Daniel dropped Ashlan off at the Cutros' at noon. A picture of Ashlan taken earlier that day shows she was a healthy and normal baby, a description her parents corroborated.

When Mrs. Daniel left work at 2:30 p.m., she went to pick Ashlan up at the Cutros' home. She pulled up as EMS personnel were arriving. Josh Cutro came out of the house and told Mrs. Daniel that Ashlan was dead.

Ashlan's mother testified that appellant told her that she, appellant, found Ashlan not breathing and Josh was out of the house at that time. Another parent testified appellant told her Josh went to pick up their children from school and that she, appellant, was the only adult in the room when Ashlan stopped breathing.

Other parents of the Cutros' daycare children also testified. One parent testified Josh told her he had just returned home when appellant came outside to tell him about the baby. Another testified that appellant told her that she, appellant, "was in the room with Ashlan when she died . . . and that she couldn't believe that she didn't notice that [Ashlan] had stopped breathing."

Dr. Reynolds, who autopsied Ashlan's body, testified petechial hemorrhages were present in her brain, which he had never seen in a SIDS death. Because he could not determine the cause of death, he concluded it was SIDS.

Ashlan's body was exhumed and re-autopsied in July 1994. Dr. Ophoven testified that Ashlan's brain had a subdural hematoma which, in addition to the petechial hemorrhages, indicated she had died of trauma and asphyxia. Dr. Gilbert-Barness concurred and stated that these injuries indicated Shaken Baby Syndrome.

Evidence of MSBP

As proof of motive, the State introduced evidence of appellant's attention-seeking behavior regarding the purported SIDS deaths of the two infants who died in her daycare.   She kept their obituaries, photos, and items of clothing, as well as frequently visiting their gravesites and emotionally discussing their deaths repeatedly with others.   Appellant also fabricated that she had lost one of her own children and that a baby had died in her care in 1992.   The State's medical experts opined that the injuries to the three infants and appellant's behavior indicated a pattern of child abuse identified as MSBP.

*State v. Cutro*, 618 S.E.2d 890, 891–93 (S.C. 2005); [ECF No. 8-23 at 262–64].

Petitioner was indicted by the Richland County Grand Jury during the July 1994 term of court for one count of murder and one count of homicide by child abuse, in connection with the death of Ashlan Daniel (94-GS-40-21178). [ECF No. 8-28 at 79–81]. Petitioner received a jury trial on those charges and was convicted of murder, but the South Carolina Supreme Court reversed her conviction on appeal.  *See State v. Cutro*, 504 S.E.2d 324 (S.C. 1998).

Petitioner was later indicted by the Richland County Grand Jury during the December 1998 term of court for one count of murder and one count of homicide by child abuse in connection with the death of Parker Colson (94-GS-40-21180), as well as one count of assault and battery with intent to kill, one count of assault and battery of a high and aggravated nature, and one count of unlawful neglect of a child in connection with the injuries sustained by Asher Maier (94-GS-40-21179).   [ECF No. 8-28 at 75–85].   Public Defenders Douglas S. Strickler ("Strickler"), Beattie Butler ("Butler"), and April Sampson ("Sampson") represented Petitioner at a jury trial June 12, 2000, through July 2, 2000, before the Honorable James C. Williams, Jr., Circuit Court Judge. [ECF No. 8-2 at 140 *et*

*seq.*].[1] The jury found Petitioner guilty of two counts of homicide by child abuse. [ECF No. 8-22 at 90–95]. Judge Williams sentenced Petitioner to two life sentences, one for each conviction of homicide by child abuse. [*Id.* at 108–09].

Petitioner appealed her conviction and sentence to the Court of Appeals. [ECF Nos. 8-23 at 270–76; 8-24 at 1–71]. On appeal, Petitioner was represented by Joseph L. Savitz, III, Deputy Chief Attorney, and Robert M. Dudek, Assistant Appellate Defender, both with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. [ECF No. 8-23 at 270]. Attorney Butler, who had been part of Petitioner's trial team, also continued to represent Petitioner on appeal. [ECF No. 8-23 at 270]. Petitioner's appellate attorneys filed a merits brief raising the following issues:

1. Whether the judge erred by permitting joinder of the [redacted] and [redacted] cases since the Supreme Court had already held that evidence regarding those two cases was not clear and convincing for purposes of *State v. Lyle*, and the state's request for joinder was a back-door effort to accomplish what the court had already held was impermissible, and the theory of Munchausen Syndrome by Proxy was simply a red herring to justify joinder?

2. Whether the judge erred by admitting evidence regarding the [redacted] funeral and other children's memorabilia appellant kept in her home since this evidence was not relevant to the issue of whether appellant was responsible for what happened to the children, and this evidence was inadmissible under the holding of *State v. Larry Don Nelson*?

3. Whether the judge erred by allowing the state to present evidence regarding 276 SIDS deaths in South Carolina, since the autopsy reports were hearsay, they were not relevant, and appellant was unable to confront and cross-examine the pathologists who performed the autopsies, and also because appellant was unable to challenge the misleading nature of this evidence, including the statewide SIDS diagram?

---

[1] The record reflects that Petitioner had previously been tried on the same charges, but that trial ended in a mistrial. [ECF No. 8-23 at 244].

4.      Whether the judge erred by refusing to allow the testimony of daycare worker Anita Niess, whose proffered testimony showed that she grieved in essentially the same manner as appellant after a child died in her daycare, since the state opened the door to this testimony by offering an abundance of evidence intending to show that appellant's grieving behavior was inappropriate, and attention seeking, and Niess' testimony was in fair response to the state's evidence?

5.      Whether the judge erred by refusing to direct a verdict of acquittal where there was not any direct evidence or no substantial circumstantial evidence appellant was responsible for harming the children, and the state's case was based on mere suspicion?

6.      Whether the judge erred by refusing to instruct the jury that mere suspicion of guilt was insufficient, since that was a correct statement of law which appellant was entitled to have charged under the facts of this case?

7.      Whether the judge erred by refusing to instruct the jury on involuntary manslaughter since there was evidence the children died because of appellant's negligence or recklessness, and not malice aforethought or extreme indifference to human life?

8.      Whether the judge erred by forcing the jury to continue deliberating after it clearly informed the court it could not reach a verdict, and later informed him that three jurors would not change their votes, and that no new evidence or charges on the law would change that fact, since the judge's actions violated S.C. Code § 14-7-1330 and the forced deliberations resulted in a coerced verdict?

[*Id.* at 5]. In a published opinion issued on August 15, 2005, the South Carolina Supreme Court affirmed Petitioner's convictions.[2] *State v. Cutro*, 618 S.E.2d 890, 891–93 (S.C. 2005); [ECF No. 8-23 at 262–64]. Thereafter, Petitioner filed a petition for rehearing,

---

[2] Petitioner's direct appeal was apparently certified from the South Carolina Court of Appeals to the South Carolina Supreme Court. As such, there is no opinion from the Court of Appeals, nor is there any petition for writ of certiorari. The final briefs were filed in the Court of Appeals in early February 2005 and the case was thereafter certified to the Supreme Court and argued in May 2005.

which was denied on September 21, 2005. [ECF Nos. 8-31, 8-32]. The remittitur was issued on September 21, 2005. [ECF No. 8-33].

On September 21, 2006, Petitioner filed an application for post-conviction relief ("PCR") raising claims for ineffective assistance of trial and appellate counsel. [ECF No. 8-22 at 175–81]. On May 7, 2009, PCR counsel Edward E. Saleeby, Esquire, and Terence A. Quinn, Esquire, filed an amended PCR application and a supporting memorandum on Petitioner's behalf. [ECF No. 8-22 at 186–212]. On May 14, 2009, a PCR evidentiary hearing was held before the Honorable Alison Renee Lee, Circuit Court Judge, at which Petitioner and her PCR counsel appeared. [ECF Nos. 8-22 at 229–48; 8-23 at 6–174]. On October 21, 2013, Judge Lee filed an order of dismissal. [ECF No. 8-23 at 243–61].

Petitioner timely filed a notice of appeal. She was represented by David Alexander, Appellate Defender, with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a petition for writ of certiorari in the South Carolina Supreme Court on February 14, 2013. [ECF No. 8-37]. The petition raised the following issues:

1.    Whether appellate counsel was ineffective in derogation of petitioner's Sixth Amendment rights by failing to appeal the issue of the admissibility under Rules 702 and 703 of unreliable and unscientific testimony regarding Munchausen Syndrome by Proxy as the basis for the trial court's improper joinder of the charges against petitioner?

2.    Whether trial counsel was ineffective in derogation of petitioner's Sixth Amendment right to counsel because they failed to object to the trial judge's omission of an answer to the jury's question of how negligence applied to homicide by child abuse?

3.      Whether trial counsel was ineffective in derogation of petitioner's Sixth
        Amendment right to counsel because they failed to call Dr. Selman Watson
        as a witness at trial?

4.      Whether this case should be remanded for reinstatement of the State's offer
        of an Alford plea and a recommendation of a sentence of time served?

[*Id.* at 3].

On April 9, 2015, the South Carolina Supreme Court issued an order denying the

petition as to questions 2 and 4, but granting the petition as to questions 1 and 3.   [ECF No.

8-39].   After receiving further briefing from both sides, the court dismissed the writ as

improvidently granted in a memorandum opinion filed on March 23, 2016.   [ECF No.

8-42].   The remittitur was issued on April 11, 2016. [ECF No. 8-43].

Petitioner filed this petition for writ of habeas corpus on June 20, 2016. [ECF No.

1].

## II.  Discussion

### A.    Federal Habeas Issues

Petitioner now asserts she is entitled to a writ of habeas corpus on the following

grounds:

**Ground One:**      The judge erred by denying trial counsel's motion for severance
                where the joinder of three separate offenses violated Petitioner's right
                to a fair trial and directly contradicted the South Carolina Supreme
                Court's holding in Petitioner's first trial that the State's evidence was
                "insufficient to establish [Petitioner] was the actor in [P.C.'s] death or
                [A.M.'s] injuries" and that the evidence of P.C.'s death and A.M.'s
                injuries was not admissible under the common scheme or plan
                exception.   This improper joinder of offenses was not cured by the
                State's purported new motive of Munchausen's Syndrome by Proxy,
                but instead, substantially prejudiced Petitioner and denied her right to
                due process of law as guaranteed by the Fifth and Fourteenth
                Amendments to the United States Constitution.

**Ground Two:**      Appellate counsel provided ineffective assistance of counsel by failing to appeal a winning issue regarding the admissibility of an expert witness's testimony and opinion regarding Munchausen Syndrome by Proxy, where this evidence was unreliable and unscientific, and served as the basis for the judge's improper joinder of three separate offenses at trial.  The admission of this evidence prejudiced the outcome of Petitioner's trial in violation of the Sixth and Fourteenth Amendments.

**Ground Three:**    The judge erred by forcing the jury to continued deliberating after it clearly informed the court on more than one occasion it could not reach a verdict and that three jurors would not change their vote.   The forced deliberations resulted in a coerced verdict.

**Ground Four:**     The evidence adduced at trial was insufficient to support the convictions for homicide by child abuse.

[ECF No. 1 at 10–11, 28, 45, 57].

   B.    Standard for Summary Judgment

   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.   *Id*. at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by Fed. R. Civ. P. 56(c), set forth specific facts showing there is a genuine dispute for trial.

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed her petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), made effective on April 24, 1996, review of her claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, state court factual determinations are presumed to be correct and the petitioner

has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.   This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires a petitioner present her claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>    (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>    (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust her state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C.

2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845–47 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held *In re Exhaustion* had placed discretionary

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162−65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed her state remedies and, as such, is procedurally barred from raising the issue in her federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passes, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim

because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir.), *cert. denied,* 555 U.S. 868 (2008). A petitioner may prove cause if she can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Coleman,* 501 U.S. at 753–54. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, she must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.    Ineffective Assistance of Counsel Claims

To prevail on her ineffective assistance of counsel claims, Petitioner must show (1) that her counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived her "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question

is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

D.     Analysis

1.     Procedurally-Barred Grounds

Respondent alleges that Petitioner's Grounds One and Three are procedurally barred because they were not previously made to the South Carolina Supreme Court in Petitioner's direct appeal.   The undersigned agrees.

a.     Ground One

In Ground One, Petitioner asserts that the trial court erred in "denying [Petitioner's] motion for severance where the joinder of three separate offenses violated Petitioner's right to a fair trial" and right to due process of law.   [ECF No. 1 at 10–11].   Respondent states that though Petitioner argued on direct appeal that the joinder of the three offenses was improper under South Carolina law, "[s]he did not assert . . . that this ruling violated due process."   [ECF No. 14 at 3].   Accordingly, Petitioner is now barred from proceeding on the federal claim in this Court.   *See, e.g., Coleman v. Thompson*, 501 U.S. 722 (1991) (holding issue not properly raised to state's highest court, and procedurally impossible to

raise there now, is procedurally barred from review in federal habeas); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996) (holding issues not presented to the state's highest court may be treated as exhausted if it is clear that the claims would be procedurally defaulted under state law if the petitioner attempted to raise them now).

Petitioner disagrees that Ground One is procedurally barred, arguing that "[i]t is clear that the [South Carolina Supreme] Court considered the federal claim" based on language in the dissent. [ECF No. 13 at 2]. In particular, Petitioner points to the dissent's statement that "[e]ven where joinder is permissible, the trial court must be mindful of protecting the defendant's right to a fair trial because 'by the multiplication of distinct charges, the prisoner may be confounded in his defense, or prejudiced in his challenges, or the attention of the jury may be distracted.'" *Cutro II*, 618 S.E.2d 890, 897 (Pleicones, J., dissenting) (quoting *City of Greenville v. Chapman*, 41 S.E.2d 865, 867 (1947)). Petitioner further relies upon a footnote in the dissent, that states, "Even if I were to find these charges were sufficiently connected so as to be subject to consolidation, I would not hold that joinder should have been denied in order to protect appellant's right to a fair trial." *Id.* (citing *City of Greenville v. Chapman*, *supra*).

A review of Petitioner's Final Brief on direct appeal shows that Petitioner's argument on this issue was that the three indictments had been improperly joined under state law. [*See* ECF No. 8-24 at 28–36]. The following excerpt from Petitioner's Final Brief captures the thrust of her argument:

> Joinder in this case was improper because the offenses did not spring from the same series of transactions, did not require the same or similar proof and, as the Supreme Court observed, the state could not prove that they were

> committed by the same offender.  Moreover, the state's strategy—using Munchausen's Syndrome by Proxy in a desperate attempt to link the three cases—allowed it to mount a broad attack on appellant's character that ventured far beyond the crimes charged.

[ECF No. 8-24 at 35].   Although Petitioner could have raised the due process arguments that she now makes in her federal habeas corpus petition, she failed to do so on direct appeal.[4]   As a result, these claims were not properly presented to the South Carolina appellate courts, which would find them procedurally defaulted if Petitioner attempted to raise them now.   Consequently, federal habeas review of Petitioner's Ground One is barred absent a showing of cause and actual prejudice, or actual innocence.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

### b.     Ground Three

In Ground Three, Petitioner asserts that the trial court erred in "forcing the jury to continue deliberating after it clearly informed the court on more than one occasion it could not reach a verdict. . . ."  [ECF No. 1 at 45].   Petitioner claims that the alleged forced deliberations resulted in a coerced verdict.   According to Respondent, this ground is procedurally barred as Petitioner's federal claim was not raised in Petitioner's direct appeal.   Petitioner, on the other hand, notes that one of her issue statements in her direct

---

[4]   The undersigned notes that the state standard for the joinder of indictments allows joinder "when the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place, and character . . . but only so long as the defendant's substantive rights are not prejudiced."   *Cutro II*, 618 S.E.2d at 894 (citations omitted).   Both Petitioner's arguments on appeal and the South Carolina Supreme Court's analysis revolved around whether the deaths of Parker Colson and Ashlan Daniel and the injury to Asher Maier were sufficiently linked to have been tried jointly, not whether the joinder of the three charges violated Petitioner's right to due process or a fair trial.

appeal specifically mentioned that "the forced deliberations resulted in a coerced verdict." [ECF No. 13 at 5].   While Petitioner is correct that she made an argument regarding a coerced verdict in her direct appeal, the undersigned cannot find that any federal claim was fairly presented to the South Carolina Supreme Court and feels constrained to find this ground procedurally barred in light of the record.

Petitioner articulated two different arguments under Argument 8 in her direct appeal.   The first—that the trial court violated a South Carolina statute in instructing the jury to continue their deliberations—is not at issue in the instant matter.   However, the second argument—that the trial court's *Allen* charge was unduly coercive—is the same issue now raised in Petitioner's Ground Three.   In her Final Brief, the entirety of Petitioner's second argument took about a page:

> Further, defense counsel correctly argued that the judge had coerced a verdict.   He knew that three jurors were holding out and, obviously, they were in the minority.   Yet, he gave an *Allen* charge over defense objection, even though the jury had not requested further instructions.
>
> The jury had twice indicated that it was deadlocked.   It began deliberations at 1:37 p.m. on the first day and was sent home after informing the judge a second time that it was deadlocked nine-to-three at around 8:40 p.m.   An *Allen* charge was given at 8:48 p.m. that night.   At 9:14 a.m. the following morning, the judge gave a full *Allen* charge.   Defense counsel then strongly alleged irregularities in the jury process when a note regarding neglect and the definition of a reasonable doubt was almost immediately given to the trial judge after the *Allen* charge.   The jury returned with a verdict at 3:00 p.m. that afternoon.
>
> In short, the jury deliberated seven hours the first day, twice telling the judge it could not reach a verdict, the second time in unequivocal terms.   The jury deliberated almost seven hours the second day, with the judge continuing deliberations over defense counsel's motion for a mistrial and allegations of jury irregularities.

> Considering all of the circumstances involved in this case, particularly since the state left the final deliberations to the judge's discretion and did not even argue for continued deliberations, the guilty verdicts in this case were coerced. *See Tucker v. Catoe*, 346 S.C. 483, 552 S.E.2d 712, 716 (2001).

[ECF No. 8-24 at 69–70]. Petitioner's argument on direct appeal that the trial court's *Allen* charge was unduly coercive amounted to little more than summary conclusions that the verdict was coerced with a short description of the timing of the *Allen* charges and the verdict. Petitioner did not provide any legal standard with which to compare the facts of her case, nor did she provide any application for the appellate court. She cited a single South Carolina case to support her argument that the *Allen* charge was improper or that the guilty verdicts were coerced. The South Carolina Supreme Court dispensed with this issue based on the state law argument, an argument that Petitioner fully fleshed out in her brief. As such, Ground Three was never properly presented to the state court on direct appeal. *See Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) ("[T]he exhaustion requirement demands that the petitioner 'do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not [suffice].'" (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)); *see also Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (holding that even under in favorem vitae review, an inmate's claim is procedurally barred unless specifically raised to the state supreme court).

2.     Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of her Grounds One and Three. In all cases in which a state prisoner has defaulted her federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, these claims are procedurally barred from consideration by this court and should be dismissed. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding that in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on these claims. Petitioner chose to pursue different (primarily

state law-based) lines of argument in her direct appeal.    Thus, she failed to raise the issues she now articulates, to raise them properly, or to preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because she has abandoned the opportunities to preserve these issues.

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show she is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish the errors she complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the trial, the solicitor presented the facts recited in the Factual Background section above and the jury determined Petitioner was guilty of two counts of homicide by child abuse. The record makes an assertion of actual innocence not credible. The undersigned finds Petitioner has failed to meet her burden of demonstrating actual innocence, and therefore, the procedural bar applies to claims raised in Grounds One and Three.

        3.     Merits Review

            a.     Ground Two

In Ground Two, Petitioner argues that appellate counsel was ineffective for failing to appeal the admissibility of the testimony by the State's expert witnesses regarding

Munchausen Syndrome by Proxy ("MSBP"). [ECF No. 1 at 28]. Although appellate counsel argued about the admissibility of the MSBP evidence through the first and second issues in the direct appeal, that related to whether the indictments were properly joined and whether the memorabilia introduced as evidence of MSBP was prejudicial, Petitioner contends that appellate counsel should have argued that the evidence of MSBP was unreliable and unscientific and should have been excluded. Specifically, Petitioner appears to fault appellate counsel because

> nowhere in the joinder issue did appellate counsel cite Rule 702, 703, *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999), *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579 (1991), *State v. Jones*, 273 S.C. 723, 259 S.E.2d 120 (1979), or any other case dealing with the admission of expert testimony or the concept of reliability.

[ECF No. 1 at 39–40].

During the PCR evidentiary hearing, the State presented the testimony of Beattie Butler, who represented Petitioner at trial and continued to represent her on appeal. [ECF No. 8-23 at 64–116]. According to Butler, appellate attorneys Savitz and Dudek served as "the primary lawyers" on Petitioner's appeal, and Butler "defer[red] to them as to what were the best grounds." [ECF No. 8-23 at 91]. Butler testified, "I felt strongly that the admissibility of Munchausen Syndrome by proxy should have been raised. They felt otherwise." [ECF No. 8-23 at 91]. Butler specifically testified that he believed the MSBP evidence was not scientifically reliable under Rule 702 and, further, that it was used as character evidence. [ECF No. 8-23 at 92–96]. However, Savitz and Dudek "didn't think it was as good of an issue as [Butler] thought it was." [ECF No. 8-23 at 101]. Neither Savitz nor Dudek testified at the PCR hearing.

The PCR court denied and dismissed Petitioner's claim of ineffective assistance of

appellate counsel, finding as follows:

> Applicant asserts that Appellate counsel failed to appeal the conviction based
> upon the trial court's denial of the motion to suppress or exclude evidence of
> MSBP. The State relied upon the evidence of MSBP to justify joining all
> three cases against Applicant. MSBP is a medical diagnosis concerning
> mental health/illness and a form of child abuse. The admissibility of
> evidence related to MSBP was a pre-trial issue discussed at length. *See
> Pre-Trial Transcripts*. Applicant states in her memorandum that the
> admissibility of the evidence was challenged under S.C. Rules of Evidence,
> Rule 702. She asserts that the scientific validity of MSBP was an issue that
> should have been addressed on appeal by Appellate Counsel.
>
> According to trial counsel Beattie Butler, the State's argument was that the
> type of child abuse that occurred in this case is akin to MSBP. Pre-trial
> testimony was offered to show that MSBP was not scientifically reliable
> under Rule 702 and that it would not meet the standards for admissibility
> under *Daubert* or *Council*. Applicant provided this Court with recent
> articles in [sic] that questioned the data utilized by the person originally
> responsible for "finding" MSBP as a medical condition. Mr. Butler testified
> that the use of MSBP evidence was so prejudicial because it was the basis to
> join the three cases together. This was the specific issue raised on appeal as
> discussed by the Supreme Court below:
>
>> 2.    Evidence of MSBP
>>
>> Appellant contends evidence concerning the memorabilia
>> seized from her home regarding the two dead infants was
>> unfairly prejudicial and improperly admitted at trial. The
>> State introduced the babies' memorabilia as indicative of
>> MSBP which is marked by attention-seeking behavior. The
>> trial judge charged the jury that it was to consider the diagnosis
>> and evidence of MSBP only for the limited purpose of
>> establishing motive or absence of illness, mistake, or accident.
>>
>> Appellant claims exclusion of this evidence is mandated under
>> *State v. Nelson*, 331 S.C. 1, 501 S.E.2d 716 (1998), which held
>> that "propensity evidence" is inadmissible. We find *Nelson*
>> distinguishable. In that case, children's toys, videos,
>> photographs of young girls, and other evidence tending to
>> depict the defendant as a pedophile were admitted at his trial

for criminal sexual conduct and committing lewd acts on a minor. We held this evidence should have been excluded because character evidence is not admissible "for purposes of proving that the accused possesses a criminal character or has a propensity to commit the crime with which he is charged." *Nelson*, 331 S.C. at 6, 501 S.E.2d at 719.

In this case, the evidence is not general propensity evidence but indicates appellant's behavior regarding the deaths of these two infants. Since the State's theory of the case was that appellant killed the victims to gain sympathy and attention for herself, this evidence is relevant to show motive. *See State v. Hocevar*, 300 Mont. 167, 7 P.3d 329 (2000) (evidence of MSBP admissible on issue of motive). Further, in *Nelson* the evidence was admitted simply to depict the defendant as a pedophile. There was no expert testimony relating the contested evidence to the charges as in this case.

Finally, collecting memorabilia of a deceased child, while perhaps uncommon, is not behavior that itself indicates a bad character. In fact, appellant presented extensive evidence that her grief was a normal response to the deaths of these children. This evidence did not unfairly suggest that appellant had a propensity to commit crimes against children. *See State v. Alexander*, 303 S.C. 377, 401 S.E.2d 146, 149 (1991) (evidence is unfairly prejudicial if it has an undue tendency to suggest decision on an improper basis). We conclude appellant was not unfairly prejudiced by the admission of this evidence. [Appellant's brief mentions of the funeral bulletin for the [redacted] child, a baby who died of SIDS while in the car of another home daycare provider known to appellant through her church. This evidence also directly related to the case at hand. The State sought to establish that appellant knew about the outpouring of sympathy for the other daycare worker and this motivated her own behavior.]

*State v. Cutro*, 365 S.C. 366, 376–77, 618 S.E.2d 890, 895 (2005).

The ruling by the trial court was that testimony would not be allowed to state that Mrs. Cutro did in fact suffer from MSBP; rather, evidence could be presented about the characteristics of the MSBP and then the State could present evidence of what Applicant did or did not do that would be reflective of the condition. On appeal, Appellate counsel argued the Supreme Court

had previously stated that the evidence relating to two of the children could not be used as motive under *Lyle*.   Appellate counsel argued that the joinder of the three cases and the use of evidence tending to show MSBP were simply *Lyle* evidence repackaged and the impermissible use of character evidence by the State.   The Supreme Court on appeal addressed the issues separately ruling on the issue of joinder and whether the MSBP evidence was improper and prejudicial.

Butler was a member of the appellate team and had the opportunity to assist in the issues framed for appeal.   He testified that he was not the lead attorney on the appeal but had researched and presented the issue to the trial court.   He served as a resource to the appellate team.   He testified that Appellate counsel was more experienced on appealing cases and thus deferred to them . . . .

Clearly, the issues relating to MSBP were raised on appeal.   For instance, Applicant's appellate brief referred to MSBP as the "Trojan horse" that the State used to argue motive.   *See* Final Brief of Appellant, p. 36.   Because the evidence was not admitted that she specifically had the condition, the scientific reliability was not critical.   Further, MSBP has been recognized by the medical and psychology community.   While it may be the subject of discussion and debate as to whether a person in fact suffers from the condition, these discussions do not affect otherwise admissible evidence in the cases.   Under the circumstances, given the manner in which MSBP was used at trial it was not ineffective not to specifically raise the Rule 702 issue on appeal.   The State's evidence of MSBP provided additional evidence of motive which further linked the charges together.   Even if counsel was ineffective in failing to raise the specific issue on appeal, the Supreme Court held that the evidence was not prejudicial.   "We conclude appellant was not unfairly prejudiced by the admission of this evidence."   *Cutro*, 365 S.C. at 377.   In this case, Applicant has not established that the issue would have produced a different result.

[ECF No. 8-23 at 250–53].

Petitioner argues that the PCR court's dismissal of this ineffective assistance of appellate counsel claim was based on the "overly simplistic" finding the appellate counsel did raise MSBP on appeal.   [ECF No. 1 at 43].   Petitioner claims that "[t]he PCR judge erred by conflating the issue of admissibility of Munchausen as unreliable and not a basis

for joinder with the evidentiary issue of the admission of memorabilia of the children kept by Cutro." [ECF No. 1 at 43]. According to Petitioner, the admissibility of the expert testimony regarding MSBP was a winning issue, and appellate counsel was ineffective by failing to raise it. [ECF No. 1 at 43–44].

Respondent argues that there is support for the PCR court's factual findings in the record and that Petitioner has failed to rebut the presumption of correctness of those factual findings by clear and convincing evidence. [ECF No. 8 at 47–48 (citing 28 U.S.C. § 2254(e)(1))]. Respondent further contends that Petitioner's argument is flawed because it fails to assess appellate counsel's representation based on the law at the time of Petitioner's direct appeal. [ECF No. 8 at 49]. According to Respondent, Petitioner's argument regarding the admissibility of the MSBP expert testimony hinges on the assumption that such testimony qualifies as scientific evidence but "ignores the law on the admission of non-scientific evidence at the time of trial." [ECF No. 8 at 49–50]. Under South Carolina law, the admission of scientific testimony under Rule 702, SCRE, was governed by *State v. Council*, 515 S.E.2d 508 (1999) and *State v. Jones*, 259 S.E.2d 120 (1979). [ECF No. 8 at 52–53]. On the other hand, "[a]t the time of Petitioner's trial and her direct appeal, South Carolina law was that '[i]f the expert's opinion [did] not fall within *Jones*, [*i.e.*, it was not scientific testimony,] questions about the reliability of an expert's methods go only to the *weight, but not admissibility*, of the testimony." [ECF No. 8 at 53–54 (quoting *State v. Morgan*, 485 S.E.2d 112, 118 (S.C. Ct. App. 1997), *overruled*, *State v. White*, 676 S.E.2d 684 (S.C. 2009)) (emphasis added by Respondent)]. According to Respondent, because the expert testimony regarding MSBP falls into the category of

non-scientific expert testimony,[5] had appellate counsel contested the admissibility of that testimony under *Council* and *Jones*, they would not have been successful as they "would have advocated the wrong test." [ECF No. 8 at 55].

Rather than directly address Respondent's contention that South Carolina law at the time of Petitioner's trial and direct appeal was contrary to the argument that the MSBP expert testimony was not admissible, Petitioner copied and pasted the last three paragraphs of her Ground Three analysis from her petition. [*Cf.* ECF No. 1 at 43–44; ECF No. 13 at 4–5].

Petitioner cannot satisfy the *Strickland* test. She has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding her ineffective assistance of appellate counsel claim. *See Strickland*, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*." (emphasis added)); *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 ("[T]he case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law."). The PCR court rejected Petitioner's argument that the MSBP evidence was not admissible, thus finding that appellate counsel was not deficient for challenging the evidence on different grounds. [*See* ECF No. 8-23 at 252–53].

---

[5] *See, e.g.*, *State v. White*, 642 S.E.2d 607 (S.C. Ct. App. 2007) (explaining that expert testimony not based on a scientific technique but rather on knowledge, skill, and training is not subject to a *Jones* analysis), *aff'd but criticized by State v. White*, 676 S.E.2d 684 (S.C. 2009) (acknowledging "[t]he foundational reliability requirement for expert testimony does not lend itself to a one-size-fits-all approach, [and] the *Council* factors for scientific evidence serve no useful analytical purpose when evaluating nonscientific expert testimony").

Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Indeed, as recited above, there is support for the PCR court's findings in the record.   For example, the PCR court apparently gave great weight to Butler's testimony,[6] which reflected that appellate counsel expressly considered the argument that Petitioner now raises but rejected it in favor of the other arguments that they made on direct appeal. Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of this issue. Based on the foregoing, Petitioner is not entitled to federal habeas relief on Ground Two, and the undersigned recommends Ground Two be dismissed.

b.    Ground Four

In Ground Four, Petitioner asserts that the evidence presented at her trial was insufficient to support her convictions for homicide by child abuse.  In support of her claim, Petitioner asserts "[t]his case is wholly dissimilar from other cases in which the Fourth Circuit has found evidence sufficient to support convictions."  [ECF No. 1 at 58].[7] She further asserts that the South Carolina Supreme Court erred in summarily dismissing her directed verdict claim on appeal and that the court's decision was contrary to, or an unreasonable application of, clearly established federal law and that it was based on an

---

[6] Under 28 U.S.C. § 2254, "'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"  *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)) (alteration in original).

[7] Petitioner does not identify what distinguishes her case from the Fourth Circuit cases that she cites.

unreasonable determination of the facts in light of the evidence presented.   [ECF No. 1 at 57–58].

Respondent disagrees that the denial of Petitioner's directed verdict was contrary to, or an unreasonable application of, federal law.   Respondent notes that "[u]nder S.C. Code Ann. § 16-3-85(A) (Supp. 2003), an accused 'is guilty of homicide by child abuse if the person causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life.'"   [ECF No. 8 at 65 (quoting *State v. McKnight*, 576 S.E.2d 168, 172–73 (2003))].   And "in the context of homicide by abuse statutes, extreme indifference is a mental state akin to intent characterized by a deliberate act culminating in death."   *State v. Jarrell*, 564 S.E.2d 362, 366 (S.C. Ct. App. 2002).   Respondent submits that it was not objectively unreasonable for the South Carolina Supreme Court to dismiss the directed verdict claim based upon the factual summary given by the South Carolina Supreme Court and later adopted by the PCR court.   Respondent then provides a very thorough outline of the facts of Petitioner's case that support her two convictions for homicide by child abuse. [ECF No. 8 at 66–94].

In reply, Petitioner argues that "[t]his was far from a case of overwhelming guilt, . . ." noting that her second trial ended in a mistrial and citing to a letter by one of the jurors, which indicates that he found Petitioner guilty of homicide by child abuse based upon a compromise during jury deliberations.   [ECF No. 13 at 9].   Petitioner then recites verbatim the entirety of her Ground Four argument from her petition.   [*Cf.* ECF No. 1 at 57–59; ECF No. 13 at 9–10].

A claim challenging the sufficiency of the evidence may be considered by courts on collateral review, but the federal court's review of such claim is "sharply limited." *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a [petitioner's] state court conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson*, 155 F.3d 405–06 (citing *Wright*, 505 U.S. at 292). Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996).

The court's review of the record reveals that Petitioner was not entitled to a directed verdict on the charges of homicide by child abuse as there was sufficient evidence before the trial court to submit those charges to the jury. As set forth in the factual recitation by the South Carolina Supreme Court, *see supra* pp. 1–5, there was evidence that both Parker Colson and Ashlan Daniel were healthy, normal babies, but both died while at the Cutros' home daycare. According to expert testimony presented by the State, Parker and Ashlan both suffered traumatic deaths caused by shaking and asphyxia. Furthermore, there was testimony indicating that Petitioner was the last person with each infant before they were found not breathing. Finally,

> As proof of motive, the State introduced evidence of appellant's attention-seeking behavior regarding the purported SIDS deaths of the two infants who died in her daycare. . . . The State's medical experts opined that the injuries to the three infants and appellant's behavior indicated a pattern or child abuse identified as MSBP.

*Cutro II*, 618 S.E.2d at 893.   There was sufficient evidence in the record to support the South Carolina Supreme Court's summary dismissal of this claim on direct appeal.[8]

The court has considered Petitioner's response, which highlights a letter from a juror and the fact that Petitioner's second trial ended in a hung jury.   However, the standard that this court must apply is not whether this was "a case of overwhelming guilt" but rather whether "no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324.   Petitioner has not satisfied her burden of proof under 28 U.S.C. § 2254 and *Jackson v. Virginia*, 443 U.S. at 324.

Further, Petitioner has failed to present evidence sufficient to show that the state courts' rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Bell v. Jarvis*, 236 F.3d 149, 157–58 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1).   The undersigned recommends that Respondent's motion for summary judgment be granted on Ground Four.

III.       Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Respondent's motion for summary judgment. [ECF No. 9].

---

[8] The South Carolina Supreme Court dismissed this issue based on the following state cases: *State v. Johnson*, 512 S.E.2d 606 (1999) (if there is any substantial evidence tending to prove the guilt of the accused, or from which guilty may be fairly and logically deduced, the case should be submitted to the jury); *State v. Brown*, 602 S.E.2d 392 (2004) (on appeal from denial of directed verdict, the court must view the evidence in light most favorable to the State).

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 1, 2016                        Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.   Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.   "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).